## TENNESSEE MANUFACTURING CO. *v.* JAMES.

### (*Nashville.*   January 26, 1892.)

1. CONTRACT OF HIRING.   *Of infant's services by joint contract of parent and child.   Emancipation.*

A father and his infant daughter joined in contract, hiring the latter's services to a third person for a stipulated compensation to be paid to the daughter, "subject to all the conditions of this contract." The contract of hiring contained a condition that the employe should give two weeks' notice of her intention to quit, and that for her failure to give such notice, or to continue work during the two weeks, she should forfeit a stipulated amount as liquidated damages, to be deducted out of her wages then due. The daughter quit service without excuse and in violation of this condition, and sued to recover for value of her services independently of this contract. The employer interposed this contract as defense to the extent of the stipulated damages.

*Held*—That the daughter's emancipation was only partial and conditional, and that the stipulation for liquidated damages, if otherwise fair and reasonable, was valid and binding as the father's contract under his reserved right in the contract to his daughter's wages.

Cases cited : Cloud *v.* Hamilton, 11 Hum., 105; 35 Am. Rep., 117.

2. SAME.   *Example of valid stipulation for liquidated damages.*

The stipulation in a contract of hiring that the employe quitting service without excuse and without giving a specified, reasonable notice of his intention to quit shall forfeit to his employer a specified amount, reasonable in itself and duly proportioned to the wages received by the particular employe, will not be held void as a contract for a penalty, but treated as a valid and reasonable stipulation for liquidated damages where the employe had service in a large manufacturing establishment that employed many hands, who were divided into sev-

eral classes dependent upon each other, and where, in the particular case, no data existed from which the actual damages inflicted could be ascertained.

Case cited and distinguished: Schrimpf *v.* Tennessee Manufacturing Co., 86 Tenn., 219.

---

### FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.   W. K., McAlister, J.

Dickinson & Frazer for Tennessee Manufacturing Co.

E. J. Wickware for James.

Lurton, J.   Minnie James, a minor, was an employe of the appellant, a corporation engaged in the manufacture of cotton goods.  The contract of employment was in writing, and was with the minor and her father.   By one of the provisions of this contract it was stipulated that the employe should give two weeks' notice of her intention to quit.   It is further provided that in case she should leave without giving two weeks notice, "or fail or refuse to faithfully work during a period of two weeks after giving notice of an intention to leave, * * * then it is hereby agreed that the amount stated below for the class to

which I may belong is agreed upon as liquidated damages due said Tennessee Manufacturing Company at the time of my failure to comply with the terms of this contract, to compensate it for all damages, both actual and exemplary, and all loss arising from my failure to carry out the terms of this agreement; and it is further agreed upon that said amount, applicable to the class of employes to which I may belong, shall be deducted from any sum which may be due me by said company, whether on account of services rendered or otherwise."

The class to which appellee belonged was that of those receiving fifty cents per day and under one dollar. The damages stipulated for this class was ten dollars. At the foot of this agreement, which was signed by appellee, was this further agreement signed by her father:

"The foregoing agreement has been read by me, and, fully understanding the same, it is also agreed to by me as binding both me and my daughter, Minnie James, who is legally disqualified from making this contract, to all its terms and conditions. I agree further, that said Minnie James is hereby authorized to receive the wages of said work, and that all sums paid to said employe are to be accepted as fully discharging all liability, to the full amount so paid, and said wages are to be subject to all the conditions of this contract as though said employe was legally empowered to act in person."

Appellee gave notice of her intention to leave, and thereafter worked ten days, but at the end of that time quit without any excuse. At the time she quit there was due her twenty days wages, including the ten days after her notice.

If the stipulation as to damages is invalid, then the company is due her ten dollars; if valid, then nothing is due her. Upon quitting she brought suit, by her father as next friend, upon a *quantum meruit.* The contract has been set up as a defense to her suit.

The Circuit Judge being of opinion that the contract was invalid, as being one with a minor who had a legal right to repudiate same, gave judgment for the plaintiff. In this we think his Honor erred. If the contract had been alone with the minor, she might undoubtedly repudiate it. and recover upon a *quantum meruit.* The law would give the infant the privilege of judging whether such a contract was beneficial or not, and of avoiding it if she elected to do so, and recovering the value of her services as if she worked without any contract. Am. & Eng. Ency., Vol. X., title Infant.

But this contract was in law with the father, who agreed that the wages, in law due to him, might be paid over to his child, "*subject to all the conditions of this contract.*" The wages of a minor, peculiar circumstances out of the way, are due to the father. This springs from his legal duty to support and educate his child. He may permit

the minor to take and use his own earnings. This is called emancipation, and emancipation will be a defense to the father's suit for the minor's wages. It may be express or implied, entire or partial. It may be conditional. It may be in writing or oral; for the whole minority, or for a shorter term; as to a part of the child's wages or as to the whole. Emancipation will not enlarge the minor's capacity to contract; it simply precludes the father from asserting his claim to the wages of his child. Bishop on Contracts, Sec. 898.

If one employ a minor with notice of the non-emancipation of the infant, it will be no defense to the father's suit for the wages that the child has received them. On the other hand, payment to the father will be no defense to the minor's suit if the employer knew of the fact of emancipation. These principles of the common law are well settled, and have not been affected by statute. *Cloud* v. *Hamilton*, 11 Hum., 105.

The cases in America are collected in a note to *Wilson* v. *McMillen*, 35 Am. Rep., 117. In view of these principles, we must construe the contract of the father as an emancipation subject to the conditions as to damages in case his child shall quit without cause and without the stipulated notice. It is as much as if he had said: "My child is a minor. As such I am entitled to her wages. I am willing that she shall work in your mill, and that the wages she may earn shall be paid to her. I agree that she shall comply with

this contract, and if she does not, then the wages legally due me shall be detained by you to the extent provided in the contract I make for her; and only such wages paid to her as I would be entitled to receive if the contract were exclusively with me." This was a conditional emancipation under a special contract made by and with the father for himself and his child. Her emancipation was partial. The father, having a legal right to her entire wages, has stipulated that none shall be paid her beyond the sum due under this agreement with him. If this contract is binding on him, the minor cannot recover beyond its limits. If the contract is invalid as to him, as stipulating for a penalty, then it will not be in the way of plaintiff's suit.

We agree with the Circuit Judge in holding that this contract does not fall within the case of *Schrimpf* v. *Tennessee Manufacturing Co.*, 86 Tenn., 219. That case concerned a contract construed as stipulating for a penalty in case of a breach. It was held not to be an agreement for liquidated damages, because the forfeiture covered all the wages due at time of breach, regardless of amount due, and regardless as to whether the arrearages were the consequence of the default of the company. It was a contract harsh and unconscionable. It preserved no proportion between sum forfeited and the actual damages, and put all employes upon same footing, whether much or little was earned, much or little due when breach occurred. The

damages were to be all that was due in any case. To one this might have been the wages of months, to another the earnings of but a day. But in that case Chief Justice Turney quoted and indorsed the language of Campbell, Judge, in *Richardson* v. *Wochler*, 26 Mich., 90, where he said: "We have no difficulty in holding that the injury caused by the sudden breaking off of a contract of service by either party involves such difficulties concerning the actual loss as to render a reasonable agreement for stipulated damages appropriate. If a fixed sum, or a maximum within which wages unpaid and accruing since the last pay-day might be forfeited, should be agreed on, and shall not be unreasonable or an oppressive exaction, there would seem to be no legal objection to the stipulation if both parties are equally and justly protected."

Applying these principles to the case 'for judgment we have no difficulty in holding that the stipulation here is for liquidated damages and not for a penalty, and that the contract is neither unreasonable nor oppressive. "The tendency and preference of the law is to regard stated sums as a penalty, because actual damages can then be recovered, and the recovery limited to such damages. This tendency and preference, however, does not exist where the actual damages cannot be ascertained by any standard. A stipulation to liquidate damages in such cases is considered favorably." 1 Sutherland on Damages, 490.

This contract of employment on its face affords

no data by which the actual damages likely to result from its non-observance can with any certainty be ascertained. Such a circumstance has been regarded as justifying the Courts in holding the sum stipulated as liquidated damages.

The plaintiff in error was a cotton mill, having in its employment hundreds of hands. The work is divided into many departments. The raw material is handled by one set of hands and put in condition for another, and the second department still further advances its manufacture; and so on through successive stages of progress. The evidence shows that each department is dependent upon that immediately below it. Now, if the operatives of one department quit, or their work is delayed, its effect is felt in all to a greater or less degree. It is also shown that it is not always easy to replace an operative at once, and that the unexpected quitting of even one hand will to some extent affect the results throughout the mill. Yet the evidence shows that it would be impossible to calculate with any certainty the precise, actual loss due to an unexpected breach of an employe's engagement; though it is shown that there are some departments of work where the quitting of a small number of hands, without notice, would stop the entire mill and throw other hundreds out of employment. In this day of great factories, and the consequent division of labor into separate departments, a degree of interdependence among employes exists which they ought and do recognize, and

which makes the obligation of each to the whole and to the common employer all the more important. The case is one, then, where the certainty of some damage, and the uncertainty of means and standards by which the actual damage can be ascertained, requires the Courts to uphold the contract as one for liquidated damages and not as providing for a penalty. The sum fixed is certain. It is proportioned to the earning capacity of the employe, and hence presumably with regard to the particular results of a breach in each department.

There is no hardship in the agreement requiring two weeks' notice. If the operative leaves for good cause, the contract would not apply. If able to work, the pay continues until notice has been worked out. That she returned the next day after quitting, and offered to work out her notice, is no compliance. The mischief had been done. She had voluntarily, and without pretense of excuse or asking to be released, gone off, and left her work standing, and endeavored to get others to go with her. The damages had accrued, and, under the facts of this case, appellant was not bound to restore her.

Reverse.    Judgment here for plaintiff in error.