[No. 6339.]

## Bilz v. Powell.

1. **Contracts—Construction—Damages—Penalty**—Upon the question whether a penalty or liquidated damages is intended, the words of the contract are not always controlling. A sum designed as liquidated damages may be declared a penalty, and a sum set down as a penalty may be held liquidated damages. —(486)

Where it is doubtful upon the words of the instrument, which was intended, or where a greater sum is to be paid upon default made in a less sum, or where the agreement imposes several distinct duties or obligations of different degrees of importance, and the damages resulting from the breach of some of the provisions of the undertaking, though not of all, are readily ascertainable, the sum to be paid by the party in default is generally held a penalty. But where the covenant is for the performance of a single act, or several acts, or several acts which are but minor parts of a single complex act, and the damage resulting from the violation of each is wholly uncertain, or incapable of being readily ascertained, especially where it is expressly provided that the sum named shall be paid as liquidated damages, or where the agreement is in the alternative, the obligor having his election to do either of two acts, but to pay a sum of money in the event that he does one of them and not the other, the sum specified is liquidated damages. Powell and Bilz entered into an agreement in writing, whereby the former was to enter the employment of the latter in the sale of auto cars for the term of one year, to give his whole time and energy to the business, to conduct himself in a sober and gentlemanly manner, and use his best efforts to effect sales. In addition to

a weekly stipend he was to receive a commission on the selling price of all sales, where he introduced the purchaser, or where the purchaser, having been turned over to him, he concluded the sale. It was further provided that out of the commission so to be paid to Powell, Bilz should retain 40 per cent. until the amount should aggregate four hundred dollars, as a fund to secure performance, by Powell, of his agreement, and that in case of his default, the fund and interest thereon should be retained by Bilz as "agreed and liquidated damages"; otherwise it should be turned over to Powell.

Held, that inasmuch as the damages resulting from the breach of Powell's agreements were incapable of ready ascertainment, the sum not disproportionate to the injury that might result from misconduct on his part, there was no multiplicity of covenants of varied kind and importance, but on the contrary no covenant on the part of Bilz not necessarily included in the general covenant to serve faithfully, and the parties had expressly stipulated that the deposit should be liquidated damages, the contract must be accepted in this sense.—(487-491)

Held, further, that the default on the part of Powell, contemplated by the contract, was such as would warrant his discharge, and not some insignificant omission, within the letter but not within the spirit of the covenant.—(491)

Held, further, that the progressive increase in the deposit, arising from the commissions earned by Powell was no ground to ascribe a different effect to the contract.—(491, 492)

Held, that a sale conducted by Bilz, and in closing which Powell participated, as a favor merely, agreeing that it should not be considered as his sale, was not within the contract.—(497)

2. **Master and Servant—Discharge of Servant**—The law does not permit the servant to place himself in a situation in which his individual interest is opposed to that of the master. —(494)

A servant employed for a certain time to assist in the sale of auto cars, giving his whole time and energy to the business and using his best efforts to make sales, etc., entered into an arrangement, before the lapse of the term of his employment, to go into the same business for himself, and instituted a correspondence with manufacturers whose cars the employer was selling, seeking to secure for himself an agency for the sale of these cars. Held, a violation of his duty towards his employers, warranting his discharge.—(493-495)

By what means the misconduct of the servant is discovered is immaterial.—(495)

3. ——**Effect of Discharge**—The discharge of the servant,

for good cause, terminates his right to compensation and com-
missions not already earned and accrued.—(496)

4.  Evidence—Admissions by Conduct—One employed to sell
goods on commission will not be allowed a commission upon a
particular sale, where, by his conduct for several months suc-
ceeding the sale, he has admitted that he was not entitled to it.
—(497)

*Appeal from Denver District Court* — Hon.
GREELEY W. WHITFORD, Judge.

### On Rehearing.

Mr. ALBERT L. VOGL and Mr. CARLE WHITEHEAD
for appellant.

Messrs. BICKSLER, BENNETT & NYE and Mr.
GEORGE D. BLOUNT for appellee.

Mr. JUSTICE WHITE delivered the opinion of the
court:

May 1, 1906, the parties to this suit entered into
a written contract, whereby Powell agreed to work
for Bilz in his "automobile business, and to give
his whole time and energy to said business, and at
all times to conduct himself in a sober and gentle-
manly manner, and to use his best efforts to make
sales of automobiles and automobile equipment for
Bilz." Bilz agreed to pay Powell for his services
$15.00 per week and "a commission of five per cent.
(5%) on the sale price of all automobiles or auto-
mobile equipment sold in cases where said Powell
either introduces the purchaser or closes the deal,
the purchaser having been turned over to him either
by Bilz or others." Sales made by Powell were to
be upon the basis of 20 per cent. cash, and balance
on delivery of the article sold. Powell's commission
was to be paid upon receipt by Bilz of the 20 per
cent. cash payment of the sales made by Powell.
The contract further provided that: "Out of Pow-

ell's commissions, as they become due, Bilz shall retain forty per cent. (40%) thereof until the amount so retained shall aggregate ($400.00) four hundred dollars, which amount so retained shall be deposited immediately upon receipt by Bilz as a savings account in The International Trust Company, Denver, in the name of Charles Bilz, trustee for Fred. M. Powell; the same to be so held as a fund to secure the performance by Powell of his part of this agreement, and in case of his default under this contract, said fund, and any interest accumulations thereon, shall be and remain the sole property of Bilz, as compensation and as agreed and liquidated damages for such default by Powell; otherwise said fund and interest accumulations thereon to be turned over to the said Powell, on the termination of this contract.''

It was stipulated that the contract should remain in force for one year, unless one of the parties thereto terminated the same, upon the failure of the other party ''to live up to the terms and provisions of this contract''; that, upon such failure, ''the other party may terminate the same by notice in writing to the defaulting party, which notice shall state the reasons for the election to terminate.'' It is unnecessary to set forth other provisions of the contract, as they are not essential to a determination of the questions here involved.

The parties entered into the performance of the contract, and the relation of employer and employee continued thereunder for the period of about seven months, when Bilz discharged Powell. Prior thereto, the $400.00 provided for in the contract had been retained by Bilz out of commissions earned by Powell, and deposited with the trust company in the name of ''Charles Bilz, trustee,'' the written contract having been modified in that respect by subsequent agreement between the parties. Thereafter Powell

sued Bilz, the complaint setting forth two alleged causes of action. By the first cause of action, plaintiff sought to recover salary from the date of his discharge to the institution of the suit, and commissions on the alleged sale of certain cars; and by the second cause, to recover the amount of deposit and accumulated interest thereon, which had been made with The International Trust Company, out of his commissions, as provided in the contract.

The answer and cross-complaint denied the indebtedness claimed, justified the retention of the deposit made with the trust company, as liquidated damages, arising from the misconduct of Powell for which he was discharged, and claimed an indebtedness of Powell to Bilz in the sum of $80.69 for moneys advanced. A replication was filed, and the cause thereafter tried to the court without a jury, resulting in a judgment in favor of the plaintiff, from which the defendant prosecutes this appeal.

If, under the terms of the contract, the amount of the deposit was intended by the parties as liquidated damages, and the plaintiff was rightfully discharged by the defendant, the judgment must be reversed.

Whether a sum fixed by contract as damages for a failure to perform shall be treated as liquidated damages, or as a penalty, is always dependent on the intention of the parties. — *Carson v. Arvantes,* 10 Col. App. 382, 385; 13 Cyc., p. 90.

In arriving at that intention, there is no single test for all cases. In most, numerous rules must be applied. Due weight should, and will be given the words used, but such words are not always controlling. Though a sum is designated as "liquidated damages," it may be construed as a "penalty"; or, if called a "penalty," it may, nevertheless, be held to be "liquidated damages" in those cases where it

is plain, from all the facts and circumstances, that such was the intent of the parties. However, when the intention is once ascertained, it controls, and courts cannot justly make a new contract for the parties, as they might have made, in the light of subsequent events. Whether it was folly or wisdom for the parties to so contract, concerns no one but themselves. Courts "have said that the law relative to liquidated damages has always been in a state of great uncertainty; and that this has been occasioned by judges endeavoring to make better contracts for parties than they have made for themselves."—*Crisdee v. Bolton,* 14 Eng. C. L. Rep. 547; *Cotheal v. Talmage,* 9 N. Y. 551, 554.

The general rules deducible from the authorities, each having more or less weight according to the peculiar circumstances of each case, and the language of the contract sought to be construed, are as follows: Where it is doubtful, from the language of the instrument, whether the sum was intended as liquidated damages, or a penalty to cover actual damages; or where a greater sum is to be paid upon the failure to pay a less; or where the agreement imposes several distinct duties or obligations of different degrees of importance, and the damages resulting from the violation of some, although not all, are readily ascertainable, the sum to be paid by the party in default is a penalty. But where the covenant is for the purpose of a single act, or several acts, or of several things which are but minor parts of a single complex act, and the damage resulting from the violation of each is wholly uncertain, or incapable of being readily ascertained, and especially where the contract provides that the sum named shall be paid as liquidated damages; or where the agreement is in the alternative, to do one of two acts, the obligor having his election to do either, but to pay a sum

of money in the event he does the one, and not the other, the sum so fixed in the contract is liquidated damages, and not a penalty.—*The Amanda G. M. Co. v. People's M. Co.*, 28 Colo. 251, 255; *Cotheal v. Talmage, supra; Geiger v. W. M. R. R. Co.*, 41 Md. 4; *Keeble v. Keeble*, 85 Ala. 552; *Chase v. Allen*, 79 Mass. 42; *Staples v. Parker*, 41 Barb. (N. Y.) 648; *Wilhelm v. Eaves*, 21 Ore. 194; *Ill. T. & S. Bk. v. City of Burlington*, 79 Kan. 797; 13 Cyc., pp. 90 *et seq.;* Bishop on Contracts, secs. 1450, 1451, 1452.

In the application of the foregoing rules to the construction of the agreement in question, it is made certain that the sum designated therein was intended as liquidated damages, and not as a penalty. The language of the instrument is in no wise ambiguous. It expressly designates the sum as liquidated damages. If it imposes several distinct duties or obligations of different degrees of importance, which we do not wish to be understood as conceding, nevertheless the damages resulting from the violation of each is wholly uncertain, and incapable of being readily ascertained. The sum stipulated is not disproportionate to the probable damage that might result from a violation of the covenants. Moreover, the parties could not with certainty compute the probable damages, or lay down a rule for so computing them, at the time they signed the contract in question. The damage that might result to defendant's business through the failure of plaintiff to faithfully perform his covenants, was wholly a matter of conjecture. It would, after default, be difficult, if not impossible, to prove actual loss or damage, yet none could doubt that damage resulted from such wrongful act. The violation of a contract of service, of the character here under consideration, necessarily involves such difficulties concerning actual loss as to render a reasonable agreement for

stipulated damages proper.· Furthermore, the contracting parties, knowing exactly their own situation and objects, were in a better position than we are to appreciate and make provision for the consequences of their own default. Where a contract "clearly states what shall be paid by the party who breaks it to the party to whose prejudice it was broken, the verdict in an action for the breach of it should be for the stipulated sum. A court of justice has no more authority to put a different construction on the part of an instrument ascertaining the amount of damages, than it has to decide contrary to any other of its clauses. Our office is to ascertain the intent of the parties, and, if not contrary to law, to carry their intent into execution " —*Crisdee v. Bolton, supra.*

In *Keeble v. Keeble, supra,* it is said:

"There are but few agreements of this kind, where the stipulation is to do or not to do a particular act, in which the damages may not, according to circumstances, vary, on a sliding scale, from nominal damages to a considerable sum. One may sell out the goodwill of his business in a given locality, and agree to abstain from its further prosecution, or, in the event of his breach of his agreement, he may stipulate to pay a certain sum as liquidated damages—as, for example, not to practice one's profession as a physician or lawyer; not to run a steamboat on a certain river, or to carry on the hotel business in a particular town; not to re-establish a newspaper for a given period, or to carry on a particular branch of business within a certain distance from a named city. In all such cases, as often decided, it is competent for the parties to stipulate for the payment of a gross sum, by way of liquidated damages for the violation of the agreement; and for the very reason that such damages are uncertain, fluctuating,

and incapable of easy ascertainment.—*Williams v. Vance*, 30 Am. Rep. 29-31, note; *Graham v. Bickham*, 1 Amer. Dec. 336-338, note; 1 Pomeroy's Eq. Jur., sec. 442, note 1. It is clear that each of these various agreements may be violated by a substantial breach, and yet no damages might accrue except such as are nominal. The obligor may practice medicine, and possibly never interfere with the practice of the other contracting party; or practice law without having a paying client; or he may run a steamboat without a passenger, or a hotel without a guest, or carry on a newspaper without the least injury to any competitor. But the law will not enter upon an investigation as to the *quantum* of damages in such cases. This is the very matter settled by the agreement of the parties. If the act agreed not to be done is one from which, in the ordinary course of events, damages, incapable of ascertainment save by conjecture, are liable naturally to follow, sometimes more and sometimes less, according to the aggravation of the act, the court will not stop to investigate the extent of the grievance complained of as a total breach, but will accept the sum agreed on as a proper and just measurement, by way of liquidated damages, unless the real intent of the parties, under the rules above announced, designed it as a penalty.''

Plaintiff contends that the agreement contains numerous covenants of the most varied kind and importance; that, for the violation of each, the agreed measure of damages is made to apply with equal force, and that the sum stated as liquidated damages is obviously disproportionate to the actual damage that might result from the violation of either. We have held that the damages resulting from the violation of each alleged covenant is wholly uncertain and incapable of being readily ascertained, and the several alleged covenants, therefore, fall clearly within

the well-recognized rule hereinbefore stated. However, in our opinion, the contract, when the subject-matter is considered, does not contain "numerous covenants of the most varied kind and importance." On the contrary, there is no covenant therein which would not necessarily be included in and covered by an agreement of the plaintiff to enter the employ of defendant as his agent and representative in the automobile business for the length of time designated. Under the latter agreement, the plaintiff would be bound to conduct himself in a sober and gentlemanly manner, to use his best efforts to make sales of automobiles and their equipment, to give his whole time and energy to the discharge of his duties, and, in all respects, faithfully and honestly further the interests of his employer. The sum designated was to be held as a fund to secure the performance by plaintiff of his part of the agreement, "and in case of his default under this contract," the fund would be and remain the sole property of defendant "as compensation and as agreed and liquidated damages for such default." The clause imposes a liability for a default under the contract. Necessarily the default contemplated was such as would warrant the termination of the contract, and not some insignificant default which might be within the letter, but not within the spirit of the agreement. For the purpose intended, the sum stipulated was quite reasonable and proper, in view of the difficulty of establishing actual damages.

It is further argued that, as the stipulated sum, under the terms of the contract, increased from time to time during the year in which plaintiff was in defendant's employ, it was intended as a penalty, and not as liquidated damages. It appears, in some cases, such reasons have been assigned for holding, that the parties intended the designated sum to be a penalty, and not liquidated damages. Such is *Stony*

*Creek Lumber Co. v. Fields & Company,* 45 S. E.
797, 799, a Virginia case, cited by appellee. The contract obligated one of the parties to pay, and the other to receive, a stipulated sum per thousand feet, for all logs cut from a particular area, and delivered to a particular point, and authorized the buyer to retain the sum of fifty cents per thousand feet, on the payments to be made monthly, until the completion of the entire work. Notwithstanding the reasons for the court's holding, assigned in the opinion, it is to be observed that the amount of damages which the one party would sustain by reason of the default of the other, was readily ascertainable. The value of the same character of logs at the point of delivery would unquestionably measure the damages, and the case falls clearly within the rules hereinbefore stated. *Davis v. Freeman,* 10 Mich. 188, also cited, is of like facts and character, and is governed by the same principle.

Moreover, it seems just as reasonable that the parties intended to make greater the liquidated damages in the event of default, the nearer the contract was completed, as it would to assume that they intended that the sum out of which actual damages were to be paid should be augmented or added to under like circumstances. If the damages which might be sustained diminished as the contract neared completion, the sum necessary to secure payment for actual damages sustained, likewise decreased. But were we to assume that the injury which might have resulted to the defendant, through the default of plaintiff, diminished in proportion as the contract remained unfinished, we do not think that of itself sufficient, under all the circumstances, to render the contract so unfair and unjust as to warrant the construction for which plaintiff contends. We know that the designated sum had accumulated prior to the expira-

tion of the first seven months of the employment. The contracting parties are presumed to have been intimately acquainted with all the peculiar circumstances of the business, and may have fully understood that the agreed sum would be quickly accumulated. Having ascertained for themselves their requirements, and written into the agreement a certain sum as liquidated damages, in the event of a violation of the contract, the parties must be held to have meant what they deliberately wrote.

While there is uncertainty and confusion in the law on this subject, as found in the great mass of judicial expression thereon, the best-reasoned cases appear to establish and support the rules herein stated and applied.

Having determined that the stipulated sum was intended as liquidated damages, we will proceed to ascertain if defendant rightfully discharged plaintiff. In November, 1906, it is undisputed that, during business hours, plaintiff took the eastern representative of the manufacturers of the Packard car, for which the defendant was then the local agent, and inspected a place, not far from defendant's, at which plaintiff stated he intended to open an automobile business, and at that time endeavored to displace defendant and secure for himself the Packard agency; that prior to such time plaintiff had a number of conversations with one McFarland as a prospective partner in said business; that thereafter, on December 20th, he and McFarland entered into a written lease of a building within the City of Denver, to be ready for occupancy April 1, in which they proposed to open and carry on an automobile business. On Sunday, December 16, 1906, plaintiff wrote to the Pope Manufacturing Company of Hartford, Conn., soliciting the agency of the Pope-Hartford automobile in Denver, stating: "For your information will

say that I am now building the finest garage in the city and have one of the best locations. I am now making arrangements for the line which I intend to handle." At the same time plaintiff wrote to the representative of the Packard Automobile Company, of whom, as heretofore stated, defendant was then the agent, seeking that agency for himself, saying: "Now, won't you please use your influence in my behalf so that I can have the Packard agency?" He therein further stated: "I am willing to put up a deposit on at least 15 cars for next year and sign a contract right now. * * * I expect to attend the New York show, and it is my intention to visit the Packard factory." Plaintiff not only entered into negotiations and took steps to establish a rival business to surpass that of defendant, but also entered into secret negotiations to take away from the latter the Packard agency, and thus destroy the very business he was employed to foster and extend. He also, to that end, misrepresented the facts regarding the conduct of the business by defendant, saying in his letter to the representative of the Packard company, that one of the Packard cars was in defendant's shop "with the steering gear all on the bum, and really the car is in a deplorable condition," and therein expressed his disapproval of the conditions permitted to exist by defendant. Under these circumstances it is not probable that plaintiff would make very strenuous efforts to sell automobiles for defendant. By waiting a very short time he could sell to all prospective purchasers cars of his own instead of cars of his principal. The law does not permit an agent to place himself in a situation in which he may be tempted by his own interests to disregard those of his principal.

In *Dieringer v. Meyer*, 42 Wis. 311, 312, it is said:

"It is well settled that if a servant, without the consent of his master, engage in any employment or business for himself or another, which may tend to injure his master's trade or business, he may lawfully be discharged before the expiration of the agreed term of service. * * * Manifestly, when a servant becomes engaged in a business which necessarily renders him a competitor and rival of his master, no matter how much or how little time or attention he devotes to it, he has an interest against his duty. It would be monstrous to hold that the master is bound to retain the servant in his employment after he has thus voluntarily put himself in an attitude hostile to his master's interests."

In the employment of plaintiff the defendant bargained for the former's disinterested skill, diligence, zeal and fidelity for the latter's exclusive benefit. When defendant discovered the lack of these in plaintiff, he had the right to discharge him and terminate the employment. A principal need not keep in his employ an agent who is working against him, and using the confidential information obtained by reason of the relation to undermine the business of such principal.—*Davis v. Hamlin,* 108 Ill. 39. By what means the principal discovers the attitude and acts of the agent, constituting a breach of the latter's duty, is wholly immaterial.

One item of commission which plaintiff sought to recover was on the sale of a car alleged to have been made to a Mr. Boettcher. The facts concerning this sale appear to be as follows: Boettcher called at defendant's place of business to purchase a car some time prior to plaintiff's employment, but there was no car in stock of the kind he desired. When plaintiff entered defendant's employ, the latter claims that he gave to him Boettcher's name as a prospective purchaser, while plaintiff claims that

defendant did not, and that he came in contact with Boettcher through another source. Be that as it may, it is certain that plaintiff was largely instrumental in interesting Boettcher in the type of car the latter, subsequent to the discharge of plaintiff, purchased. He demonstrated such type of car to Boettcher, and secured his verbal promise to purchase, in the event one which had been ordered from the factory by defendant, should prove satisfactory. Plaintiff's right to a commission on this sale depends entirely upon the terms of the contract, the date of sale, and the relation of the parties. The language of the contract means that plaintiff was entitled to a commission if, by his efforts during its existence, he induced a person to purchase a car from the defendant. The sale to Boettcher was not closed when Powell was discharged. When that event happened it was not known certainly that Boettcher would buy. There was a condition precedent to the consummation of a sale to him, to wit: that the car then "ordered should prove satisfactory." At that time plaintiff had neither earned, nor was he entitled to a commission on this particular sale. It is held, without exception, that the discharge of an agent for just cause terminates all right to commissions or compensation not then already earned and accrued. In *Urquhart v. Scottish-American Mfg. Co.*, 85 Minn. 69, an agent was employed to negotiate loans for the defendant, his compensation being a commission upon collections which he might make upon the loans as they fell due. He was discharged for cause prior to the accrual of his commission upon outstanding loans he had negotiated. The court, in affirming the rule, that if the principal had good cause to discharge the agent, the latter forfeited all claims to his commissions, said: "If there was cause for the termination of the contract that justified the

principal in determining that its agent should not be trusted further with its business, for the reason that his acts made it improper for him to complete the unfinished collections, * * * then the common-law rule would apply, which authorizes the discharge of an agent at any time for sufficient cause, in which case he could recover nothing.''

An agent will forfeit his commissions if he engages in any transaction which amounts to a fraud upon his principal, such as betraying his trust by acting adversely to his interests.—Story on Agency, sec. 334; *Hofflin v. Moss,* 67 Fed. 440, 444.

Plaintiff's claim to a commission on this sale cannot be supported, as he was lawfully discharged for cause, and the commission was not then earned.

Another item of commission claimed by plaintiff is for the sale of a car to one Traylor. The facts regarding this transaction are, that defendant conducted negotiations for the sale of a car to Traylor to the extent that the latter had agreed to purchase the car if defendant would accept a note in part payment therefor. Defendant, having to go east, requested plaintiff to ascertain if the bank would discount the note and, if it would, to deliver the car to Traylor, receive the note and a check for the balance. This the plaintiff did, and closed the deal. Defendant testified that he asked plaintiff to do this ''as a favor, not in any way to consider it as a sale, and that plaintiff agreed thereto.'' Plaintiff did not deny that such was the agreement. Furthermore, plaintiff made no demand for commission on this sale, or that he should be credited with it on the books of defendant until six months after the sale, and nearly three months after he was discharged. He had access to defendant's books and frequently examined them. It is clear that plaintiff did not expect com-

mission on account of this sale, and it is likewise certain that he was not entitled thereto.

While it is quite probable the court wholly disregarded the claim of plaintiff for salary after his discharge, it is proper to state, that if such was not the view of the court, it should have been, as plaintiff was not entitled to salary or compensation for the period after his discharge.

The former opinion is withdrawn, the judgment reversed, and the cause remanded.          *Reversed.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT dissent.

---

Mr. JUSTICE GABBERT, dissenting:

As said in the majority opinion, no rule can be formulated which will serve as a universal test by which to ascertain whether a sum fixed by contract shall be treated as liquidated damages, or as a penalty in case it is violated. In a measure, at least, the character of the agreement controls. The test applied by the majority is correct if the agreement was such that it was applicable. In the opinion of the writer it is not.

The contract contained several independent covenants on the part of the plaintiff, and Bilz is not entitled to recover the sum named as liquidated damages unless it be held that it applies to each covenant on the part of plaintiff, and can be recovered for a breach of either. Plaintiff agreed to remain in the employ of the defendant for one year; to give his whole time and energy in discharging the duties which he engaged to perform; to at all times conduct himself in a sober and gentlemanly manner; and to use his best efforts to make sales of automobiles and automobile equipment. Assuming,

then, that the so-called liquidated damages applies
to each of the covenants, what is the result? If
plaintiff did not remain in defendant's employ for·
the full period of one year, the defendant could de-
clare the sum deposited as forfeited. If he failed·to
devote his whole time or his whole energy to the busi-
ness, the sum might be forfeited, notwithstanding
the fact that the period during which he was inatten-
tive to the discharge of his duties was exceedingly
short, and the damages resulting from his failure to
comply with his contract in this respect merely nomi-
nal. If his engagement to use his best efforts to make
sales of automobiles was violated, it could also be for-
feited, or he might employ his best efforts in making
such sales, and his failure to do so in selling automo-
bile equipment would result in a forfeiture, according
to the construction of the contract in the majority
opinion. In short, if he violated any one covenant on
his part, even to a slight extent, the deposit would
be forfeited, although he scrupulously complied with
every other covenant upon his part, and the one he
did violate resulted in nothing more than nominal
damages. This is grossly disproportionate to the
actual damage or injury. Certainly, the parties did
not intend such unjust and inequitable results, but
must have regarded the sum named which was to be
deposited as a penalty, rather than fixed or liqui-
dated damages.

As applied to the conditions of the contract un-
der consideration, the rule is, that, where a contract
specifying a fixed sum as liquidated damages for
its breach contains various conditions of differ-
ent degrees of importance, to each of which the
agreed measure of damages is made by the terms
of the contract· to apply with equal force, with-
out reference to the real damage that would en-
sue from a violation of any one of them, and the

damages resulting from a breach of any one of such conditions would obviously be inconsiderable as compared with the sum stated in the contract as damages, the stipulated sum will be regarded as a penalty and not as liquidated damages. In short, as applicable to this case, where there are numerous covenants of the most varying kind and importance, and yet the sum named is payable for the breach of any, even the least, it is a penalty.—*Wilhelm v. Eaves,* 21 Oregon 194; *Carter v. Strom,* 41 Minn. 522; *Staples v. Parker,* 41 Barb. (N. Y.) 648; *Keck v. Bieber,* 148 Pa. St. 645; *Raymond v. Edelbrock,* 107 N. W. 194; *Boulware v. Crohn,* 122 Mo. App. 571; 13 Cyc. 101.

So that the sum named in the contract can only be declared liquidated damages upon a theory contrary to this rule.

In the majority opinion it is sought to take the case without this rule by giving the contract the construction that it does not contain numerous covenants, but that, in fact, there is but one general covenant on the part of Powell. In the opinion of the writer, this construction is not correct. Powell was to remain in the employ of Bilz a specified time, and in the discharge of his duties was to do certain specific acts in a specific manner, all of which it is apparent, from a reading of the contract, are independent of each other. Certainly, according to the language of the contract itself, he could violate it by not conducting himself in a sober and gentlemanly manner, or by not remaining in the employ of Bilz for the specified length of time, or by not using his best efforts to make sales of automobiles or automobile equipment, each and all of which are independent of any implied covenant upon his part not to establish a rival business or undermine that of his employer. A violation of either one of these

covenants would not constitute a violation of any other; and yet, according to the construction given in the majority opinion, the violation of any one, insignificant as it might be, insofar as damaging Bilz, would result in Powell forfeiting a large sum.

There is another rule which, in the judgment of the writer, is controlling. Certainly, when defendant claims that the sum named in the contract is to be treated as liquidated damages, the contract, in connection with the facts, must show that this is the case. In the opinion of the writer this has not been shown. Powell agreed ''to work for Bilz in his automobile business, and to give his whole time and energy to said business, and at all times to conduct himself in a sober and gentlemanly manner, and to use his best efforts to make sales of automobiles and automobile equipment for Bilz.''

These covenants were in the conjunctive. Bilz only claims that he was justified in discharging Powell because he sought to establish a rival business, and secure for himself the agency which Bilz then had. Conceding that this is a violation of one of the covenants on the part of Powell, it is not a violation of all. A violation by Powell of either of the covenants specially named would not constitute a violation of the contract which the majority holds justified his discharge. There is no provision that if Powell violated any one of the covenants upon his part, that he would forfeit the sum named and designated ''stipulated damages,'' but that the sum which Bilz was to hold out of the commissions earned by Powell was to be ''held as a fund to secure the performance by Powell of his part of this agreement.'' From this language of the contract it must be conclusively presumed that what the parties had in mind was its breach as a whole; so that, adopting what is said in the majority opinion, to the effect

that where the damage resulting from the violation
of the terms of a contract are incapable of being
readily ascertained, and for such damages the con-
tract provides that a specified sum shall be treated
as liquidated damages, is one of the tests by which
to ascertain whether such sum is to be treated as
penalty or liquidated damages, and assuming that it
would be applicable to the case at bar if the contract
on the part of Powell had been violated as a whole,
Bilz has not shown himself entitled to the deposit,
because no such violation is claimed or shown.

The contract imposed a liability for the viola-
tion of the agreement on the part of Powell, and not
for some one of the obligations thereby assumed by
him. It is certainly unreasonable to impose the pay-
ment of a considerable sum of money on a party
upon the violation of one of several obligations, the
performance of all of which was intended to assure
to the other the performance of the contract as a
whole.—*Brownold v. Roddell,* 130 App. Div. Repts.
(N. Y.) 371.

In my opinion, Powell was entitled to his com-
mission on the Boettcher transaction. He had earned
this commission before he was discharged, because
he was the inducing cause of the Boettcher purchase.
Where one who has employed another for a definite
period discharges the employee before the expira-
tion of the time, even for good cause, he is responsi-
ble to him for his services as agreed upon up to the
date of his discharge. — *Hilderbrand v. American
Fine Arts Co.,* 85 N. W. (Wis.) 268; *Mallonee v.
Duff,* 72 Md. 283; *Hoffman v. The World's Colum-
bian Exposition,* 55 Ill. App. 290.

I concur in the conclusion that Powell was not
entitled to a commission on the Traylor transaction.
In my view of the case, the question of whether or
not Bilz was justified in discharging Powell is not

involved. Bilz did not claim special damages for the alleged misconduct of Powell.

The cause should be remanded to the district court with directions to modify its judgment to the extent of deducting the amount awarded on account of the Traylor sale, and as thus modified it should stand affirmed.