DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE COUNTY OF MORRIS.

SUBURBAN GAS COMPANY, A NEW JERSEY CORPORATION,
PLAINTIFF, v. PHILLIP MOLLICA, DEFENDANT.

Decided January 26, 1943.

For the plaintiff, *Charles I. Malovany* (*Michael N. Chanalis,* of counsel).

For the defendant, *William H. Yanowsky* (*Marius Grosso,* of counsel).

SCERBO, D. C. J.   On April 8th, 1939, the plaintiff, Suburban Gas Company, a New Jersey corporation, and Phillip Mollica, the defendant, entered into a written agreement, the terms and clauses of which may be briefly stated as follows:

(a) The defendant was to permit the Company to connect to his property all necessary equipment needed to supply gas, and the company had the option, upon the expiration of the contract or upon "failure to meet the terms of this contract," to remove this equipment; (b) the defendant agreed, further, to purchase his gas requirements from the Suburban Gas

Company for a minimum period of three years and thereafter on a year-to-year basis, unless terminated by notice; (c) the defendant agreed to pay the Company for all gas at a specified rate upon demand, with a minimum charge per month of $1.15; (d) for the purposes of installation and maintenance, the defendant agreed that only equipment of the Suburban Gas Company would be used unless the Company indicated otherwise in writing; (e) the defendant also agreed to pay certain installation charges prevailing at the time of his application, and the Company bound itself to "supply the entire gas requirements of the undersigned;" (f) finally, the parties agreed that "Inasmuch as any loss arising from a breach of this agreement would be difficult of determination it is agreed that liquidated damages for any such breach is agreed upon to be fixed at the rate of $2 per month for all unexpired months of the life of this agreement."

The necessary equipment was installed by the Company to supply liquified petroleum gas to the defendant, but in August of 1941, some eight months before the contract was to expire, the defendant refused to pay the Company the sum of $7.04 due on account after demand made by the Company in accordance with the agreement. On the facts before me, this clearly constituted a breach of the foregoing contract.

The Company instituted the present action to recover the $7.04 due for liquified petroleum gas supplied to the defendant, and also, on another count, sought to recover liquidated damages at the rate of $2 per month for the unexpired months of the life of the agreement, in accordance with paragraph (f) of the contract.

There is no doubt, from the evidence, that the defendant is justly indebted to the plaintiff Company for liquified petroleum gas that was supplied before this action was instituted. The main controversy involves the clause in the contract providing for liquidated damages.

The defendant contends, in effect, that clause (f) should be construed not as a provision for liquidated damages, despite the label given to it by the parties, but in the nature of a penalty, and therefore, under the well established rule in this jurisdiction, it should be given no effect.

The defendant rests his contention that clause (f) constitutes a penalty and not a provision for liquidated damages on two principal grounds:

(1) That the damages stipulated are wholly disproportionate to the probable loss, and therefore the stipulation does violence to the well established rule that the parties to the contract must adhere to the principle of just compensation.

(2) That the contract in question contains numerous covenants of varying degrees of importance, and must therefore be construed as a penalty.

I. Viewing the facts and circumstances of the parties as of the time the contract was entered into, I am convinced that the stipulation for liquidated damages of $2 per month does not appear to be exorbitant. In the first place, the contract itself establishes a minimum charge of $1.15 per month. This charge, I take it, would be the prevailing rate even though the consumer made no use whatsoever of the petroleum gas during an entire month. Furthermore, as counsel for the defendant concedes in his brief, on page 4, the charges for the consumption of gas during the period of the contract before the breach actually averaged $2.50 per month. It is, of course, settled that in determining whether a provision in a contract is one for liquidated damages or for a penalty, the reasonableness of the sum fixed, *viewed as of the time when the contract is made,* is the important factor. *Borden* v. *Manley,* 127 *N. J. L.* 461, 463; 23 *Atl. Rep.* (2d) 281.

It is also true that at the time the parties entered into this agreement there was no way of foretelling just when a breach would occur. There was no precise manner in which to estimate the loss to the Company in trade or profit, or exactly what loss the defendant as a consumer of gas would incur in the event that the Company discontinued supplying him. No exact pecuniary standard was available. All of these factors were purely speculative at the time the parties entered into their agreement. Furthermore, it is not unlikely that, although the defendant was charged for installation of equipment at the time the contract was entered into, it could in no manner fully compensate the Company for the costs of purchasing, setting up and maintaining all the necessary equipment.

In view of all of these facts and circumstances, I do not think that when the parties agreed to liquidated damages of $2 per month, the amount was either exorbitant or extravagant; and, as a matter of fact, I think that in view of the average monthly charge to the consumer, it was exceedingly reasonable.

I conclude also that when the parties made their agreement, the harm that would be caused by a breach thereof was incapable or very difficult of accurate estimation, *Restatement of Contracts, A. L. I.,* § 339 (1) (b), and "not readily susceptible of proof," *Ibid., N. J. Annotations,* § 339, citing numerous decisions in this state.

II. In support of the contention that the clause in question should be construed as a penalty and not as one providing for liquidated damages, the defendant relies heavily upon *Summit* v. *Morris County Traction Co.,* 85 *N. J. L.* 193; 88 *Atl. Rep.* 1048; *Whitfield* v. *Levy,* 35 *N. J. L.* 149, and similar cases.

In these decisions the court found that there were several covenants of varying degrees of importance, with liquidated damages provided for in case of the breach of these covenants, and it was held to be a penalty. The reason for the rule is apparent. If a large sum of money is forfeited as damages in the event of a breach of one covenant which is of great importance, and the same is to apply equally to the violation of a very trivial and insignificant covenant, the non-offending party is in truth securing a penal sum, since the loss resulting from the breaches differ in amount.

It is well settled in this state that where the sum fixed as damages is applicable to more than one stipulation in the contract and where the stipulations vary in importance, it is a penalty, without regard to whether it would have been a penalty if applied only to the single breach in question. *Restatement of Contracts, A. L. I., N. J. Annotations,* § 339, citing *Summit* v. *Morris County Traction Co.,* 85 *N. J. L.* 193; 88 *Atl. Rep.* 1048; *L. I. A.* 1915E, 385 (*Court of Errors and Appeals,* 1913); *Gibbs* v. *Cooper,* 86 *N. J. L.* 226; 90 *Atl. Rep.* 1115 (*Court of Errors and Appeals,* 1914); *Lansing* v. *Dodd,* 45 *N. J. L.* 525 (*Supreme Court,* 1883);

*Whitfield* v. *Levy,* 35 *Id.* 149 (*Supreme Court,* 1871) ; *Cheddwick's Ex'r* v. *March,* 21 *Id.* 463 (*Supreme Court,* 1848).

But the plaintiff contends that these covenants, though several in number, are interdependent; in truth. resolve themselves into one and form one focal point: namely, that of supplying fuel for the payment of a certain sum. In support of this suggestion, however, it cites no authorities.

Thus the question in this case is narrowed to a precise issue: Does the contract contain numerous covenants of varying degrees of importance, thereby attaching to it the character of a penalty, or does it contain, in legal effect, a single covenant for the breach of which liquidated damages may be stipulated by the parties?

A superficial examination of the contract in this case would seem to indicate that it comprises *a series of covenants,* a violation of any one of which would result in the damages stipulated in clause (f). But looking at the substance rather than the mere form of the agreement, it can hardly be said that this contract involves more than an agreement whereby the defendant gives to the plaintiff Company the exclusive right to supply him with all necessary petroleum gas, including the installation and servicing of equipment, for which the consumer in turn agrees to pay the Company at a specified rate upon demand. The case, I think, therefore falls within those decisions, discussed *infra,* which hold that where there are a series of covenants which call for a single act or several acts which are all part of one complex act, all with one primary purpose, the contract will be construed as providing for one stipulation and the rule that is ordinarily applied to contracts with several covenants is not applicable.

Whether the agreement in question is construed as involving only one stipulation, calling for several acts all related to a single transaction, or as providing for liquidated damages in the event of a breach of the entire contract, the result reached is the same.

(1) The terms of this contract as to liquidated damages and those in the contract in *Borden Co.* v. *Manley, supra,* decided by the Supreme Court January 3d, 1942, are indistinguishable. In the *Manley* case the *Borden* Company

entered into an agreement with Manley whereby it loaned him an electric motor compressor and thermostat, and in consideration, Manley agreed to purchase all his ice cream and frozen commodities from the Borden Company. Paragraph 12 of the agreement reads as follows:

"*In the event that* the Customer discontinues the sale of ice cream, sherbets and other similar frozen commodities at said address so that the Customer does not require any such commodities, *or in case of any other breach of this Agreement by the Customer or* upon the issuance of any attachment, execution or like process against the Customer or the Customer's property or any part thereof *or* if a petition in bankruptcy is filed by or against the Customer, *or* if the Customer petitions or applies for any reorganization pursuant to the Bankruptcy Act or any other Act or law, *or* if a receiver of the Customer's property or any part thereof is applied for or appointed, *or* if the Customer makes an assignment for benefit of creditors, the Company, or its agents, shall have the right forthwith to enter upon the premises of the Customer and, without let or hindrance, *take possession of and remove* the said refrigerating equipment, with or without process of law, and the Customer thereupon shall be liable for and pay to the Company as and for liquidated damages the sum of Fifty Dollars ($50) to cover the cost of installation, removal and reconditioning of such equipment, the amount of which damages is not now ascertainable * * *." (Italics ours.)

It is apparent that there were various methods, some expressed and some unexpressed in the agreement, whereby the defendant, Manley, could terminate the agreement by discontinuing the sale of ice cream and other frozen commodities. It is also significant that the liquidated damage clause included this provision: "or in case of any other breach of this Agreement by the Customer * * *."

But the central fact was the discontinuance of the sale of the company's commodities. The contract in the case *sub judice* has a similar primary purpose. In the *Manley* case, upon the happening of any of the events stipulated, two things could occur: first, the company could "take possession of and remove" the refrigerating equipment and, second, the

Customer would be liable for liquidated damages in the sum of $50.

In the instant case, the terms of the contract are very similar. Upon the "failure to meet the terms of this contract," the company had the right first, "to remove" the equipment, under paragraph (a) and, second, under paragraph (f), the Customer would be liable to pay in liquidated damages the sum of $2 per month for the unexpired months of the term of the agreement.

The only possible distinction that could be made between the two cases is that in the *Manley* case the company specifies the costs which the liquidated damages were intended to cover. This does not appear in the contract in the present case, but undoubtedly the parties had a similar intention. Nevertheless, the adjudicated cases on this subject do not make such a specification a prerequisite to the recovery of liquidated damages.

The court in the *Manley* case did not go through a highly technical procedure of calling every act in the contract a separate covenant, but instead, it viewed the contract as a single stipulation with one primary purpose.

But even if the "covenants" in the present agreement are considered as numerous, it can hardly be said (1) that they are *"disconnected* stipulations;" nor can it be said (2) that these stipulations are of *varying* degrees of importance, for a violation of any one of them leads to the same singular fact; namely, that the plaintiff is deprived of the exclusive right to supply the defendant with petroleum gas. Both of these factors are necessary in order for the rule contended for by the defendant here to apply. *Borden* v. *Manley,* 127 *N. J. L.* (at *p.* 463) ; 23 *Atl. Rep. (2d)* 281.

(2) After stating the rule that where a contract contains several covenants of different degrees of importance and the sum named is to be paid for the breach of any of them, it will be treated as a penalty, the writer in 15 *Am. Jur., Damages,* § 253, declares:

"The rule above stated has been held not to apply where the contract has only one primary purpose, regardless of its form * * *" (citing *Matles* v. *Bairs,* 176 *Okla.* 282; 55 *Pac.*

*Rep.* (*2d*) 48, citing *R. C. L., Dunlop Pneumatic Tyre Co.*
v. *New Garage and Motor Co.* (1915), *A. C.* (*Eng.*) 79;
*Ann. Cas.* 1915C 939—*H. L. Annotation: L. R. A.* 1915E,
389).

(3) *Bliz* v. *Powell,* 50 *Colo.* 482; 117 *Pac. Rep.* 344; 38
*L. R. A.* (*N. S.*) 847. This case involved a contract for
employment wherein the employee agreed to do certain spe-
cific acts such as to remain sober and make sales of automo-
biles and, in the event of a breach, liquidated damages was
provided for. In its opinion, the court said:

"Where the agreement imposes several distinct duties or
obligations of different degrees of importance, and the dam-
ages resulting from the violation of some, although not all,
are readily ascertainable, the sum to be paid by the party in
default is a penalty. *But where the covenant is for the pur-
pose of a single act, or several acts, or of several things which
are but minor parts of a single complex act,* and the damage
resulting from a violation of each is wholly uncertain, or
incapable of being readily ascertained, and especially where
the contract provides that the sum named shall be paid as
liquidated damages * * * the sum so fixed in the contract
is liquidated damages." *L. R. A.* 1915E, 393.

In this case, the contract provided that Powell was to work
for Bliz in the latter's automobile business, to give his whole
time and energy to said business, to conduct himself at all
times in a sober and gentlemanly manner, to use his best
efforts to make sales of automobiles and also automobile
equipment. Bliz was to pay Powell for his services at a
weekly rate in addition to a commission. In addition to all
of these stipulations, there were several other provisions in
the contract. Liquidated damages were provided for in the
sum of $400 in the event of a breach of the contract.

Counsel in that case, just as counsel in this case, made the
same argument in respect to numerous covenants. The court
met that argument with these words, 117 *Pac. Rep.* 344, 346;
50 *Colo.* 482:

"Plaintiff contends, that the agreement contains numerous
covenants of the most varied kind and importance; that for
the violation of each, the agreed measure of damages is made

to apply with equal force, and that the sum stated as liquidated damages is obviously disproportionate to the actual damages that might result from the violation of either * * *. *However, in our opinion, the contract, when the subject-matter is considered, does not contain "numerous covenants of the most varied kind and importance."* On the contrary, there is no covenant therein which would not necessarily be included in, and covered by, an agreement of the plaintiff to enter the employ of defendant as his agent and representative, in the automobile business for the length of time designated." (Italics ours.)

(4) *Clement* v. *Cash,* 21 *N. Y.* 253; 48 *A. L. R.* 909. This case involved a contract which required the plaintiff to pay $4,000, to sign two mortgages, one of them for $3,737 to convey a house and lot, and also to deliver two notes for $500. The contract provided that, if either of the parties failed to perform his part of the contract, he should pay the other $2,000 as liquidated damages. The court held that this was not a penalty, saying:

*"The contract in question in legal effect provided but for the performance of a single act on each side, and at the same period of time, viz., the execution and delivery of a deed of the land by the defendant and the payment therefor by the plaintiff.* * * * If the defendant failed to convey or the plaintiff to make payment in the way covenanted, there was a total non-performance." *L. R. A.* 1915E, 391; 21 *N. Y.* 253, 260.

Conceivably, the court could have taken each provision of the contract and treated it as a separate and distinct stipulation, instead of as several acts closely interwoven with, part of and inseparable from, a single transaction. But instead, the court construed the agreement as calling for the performance in legal effect of a single act.

The court said, 21 *N. Y.* (at *p.* 260):

"That the defendant agreed to receive in payment for his deed, and the plaintiff to pay, simultaneously with its delivery, the consideration in money and other property, cannot divest what was to be done of the *character of a single transaction."*

(5) In *L. R. A.* 1915E, 389, in the editor's note to the leading case of *Summit* v. *Morris County Traction Co., supra,* the rule is stated as follows:

"When the damages for a breach of all the stipulations are uncertain in their nature and cannot be ascertained, the sum provided for in the contract is held to be liquidated damages. *So where the stipulation is construed to be for a single thing, and it will be difficult to ascertain the damages, it will be held liquidated.*"

Following the statement of this rule, the annotation cites *Cushing* v. *Drew,* 97 *Mass.* 445, in these words:

"A sale contract of horses and wagons and good will of an express business provided for refraining from that business there as long as the purchaser continued in business there, and provided payment of $900 in case of violation. This was held liquidated damages, *as the stipulation was for a single thing, to abstain from interference,* and it would be difficult to estimate the damages."

(6) In the English case of *Mercer* v. *Irving, El. Bl. & El.* 563, cited in *L. R. A.* 1915E, 389n, a case involving a bond for 300 pounds given not to practice medicine or surgery, or open another pharmacy within a mile of the one sold, Mr. Justice Coleridge said:

"Reliance seems to be placed on the circumstances that some of the matters provided for are slight, and that some breaches of the agreement might even be made unintentionally. There is, no doubt, weight in that consideration; but when we look on the other side, the result seems to be the opposite way. *The stipulations are provisions for uninterrupted enjoyment throughout a small area; and they point out how much is to be considered an interruption.* It is idle to say that, if the defendant attends a single patient within the area, the loss of the emolument in the particular case measures the damage resulting from the breach."

(7) In *Law* v. *Local Board of Redditch* (1892), 1 *Q. B.* 127, a contractor on a sewer covenanted to pay on default 100 pounds and five pounds for every seven days the work was not completed after a certain date. On the surface it was apparent that the agreement contained more than one stipu-

lation, but the court, looking at the substance, said that liquidated damages were payable as to a single event—the non-completion of the work. Kay, L. J., said:

"I cannot agree with the ingenious argument that, because there may be many matters, some very small, which would constitute non-completion, these sums may be regarded as payable on several events. *According to that argument, there must be considered to be several different non-completions of the work. There may be different causes of non-completion, but non-completion is only one single event.*" *L. R. A.* 1915E, 394.

(8) In 48 *A. L. R.* 909, the rule is stated as follows:

"It has been held that, although in form the contract is to pay a gross sum for its breach, and the parties covenant to do several different things, yet, *if in legal effect the contract provides only for a single act by each party, then, notwithstanding its form,* it will be upheld as a provision for liquidated damages, the provision in other respects being sustainable as one for liquidated damages. *Mundy* v. *Culver* (1854), 18 *Barb. (N. Y.)* 336. (Italics ours.)

(9) *Brownold* v. *Rodbell,* 130 *App. Div.* 371; 144 *N. Y. Supp.* 846. This was a contract by an employee to give his entire time as salesman, to perform his work and also to engage in no other business for himself, nor to engage in any business for any other person. The agreement provided for $1,500 as stipulated damages in the event of violation. The court held that the damages stipulated applied to a violation of the whole, and not to a violation of one stipulation. The court said:

"There is no provision that if the plaintiff should violate any of its provisions, then the plaintiff would be liable for the stipulated damages, but that if the plaintiff should *'violate this agreement,'* then the stipulated damages should be payable." (Italics ours.)

The words used in the contract in the instant case are: "a breach of this agreement" and "liquidated damages for any such breach."

(10) A provision in a contract was held to be for liquidated damages under the following facts, 59 *A. L. R.* 1143:

"* * * agreement whereby one employed for one year as a designer, to pay $1,000 as liquidated damages in case he fails to give his entire time to his employer, or becomes interested in some other business, *Simon* v. *Linden* (1919), 107 *Misc.* 340; 176 *N. Y. Supp.* 491 (affirmed without opinion in (1919) 190 *App. Div.* 899); 179 *N. Y. Supp.* 951, (affirming (1919) 106 *Misc.* 387; 176 *N. Y. Supp.* 257), (the stipulation being meant to apply to a breach of the entire contract, the rule applicable to the breach of one of several conditions of varying importance could not be applied)."

(11) In *Philadelphia Dairy Products Co.* v. *Polin*, 147 *Pa. Super.* 26; 23 *Atl. Rep.* (*2d*) 221, the contract provisions were similar to those in the *Manley* case and in the instant case. The company agreed to sell and the dealers agreed to buy the company's ice cream and other frozen products to the full extent of their requirements for a term of two years. A definite sum was agreed upon as liquidated damages in the event of a breach of one of the following covenants:

(a) If the dealers neglected or refused to purchase from the company ice cream and other frozen products to the full extent of the dealers requirements; (b) or failed to pay the invoices therefor when due; or (c) discontinued in business in violation of another paragraph of the agreement.

In construing the contract to determine whether it provided for a penalty or liquidated damages, the court declared, 23 *Atl. Rep.* (*2d*) 211, 223:

"The particular breach of contract involved in this case relates only to appellants' neglect or refusal to purchase appellee's product for the entire term of the agreement. It is precisely to this breach alone that the provision for liquidated damages applies. A fair and careful reading of the contract supports no other construction."

\*        \*        \*        \*        \*        \*        \*

These cases and authorities, I feel, are controlling. They call for a rejection of the suggestion that a contract having as its primary purpose a single event, may nevertheless be given a tortured construction by splitting it into a series of minor acts, and blindly applying to it the label of a contract "with numerous stipulations of varying degrees of importance."

Courts have not indulged in such niceties. It conforms neither to reasoning nor to the purpose which originally motivated courts to adopt the rule that has been heretofore urged. *Clement* v. *Cash,* 21 *N. Y.* 253, 259; *Cotheal* v. *Talmadge,* 9 *N. Y.* 551.

. The general rule is that where a contract contains disconnected stipulations of varying degrees of importance, and liquidated damages have been agreed upon in the event of a breach of any such stipulations, the contract will be construed as providing for a penalty. But where a contract has only one primary purpose, but expressly calls for several acts, which are but minor parts of a single complex act, then regardless of its form, the general rule will not be applied. I conclude, therefore, that the plaintiff is entitled to judgment.

Judgment will be entered for the plaintiff on both counts in the sum of $23.04, $16 as liquidated damages on the first count and $7.04 as actual damages on the second count, together with interest and costs of suit.