E.F. COE t/a Cabana Motel, Appellant,

v.

**THERMASOL, LTD., Appellee.**

No. 85–1916.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1986.

Decided March 6, 1986.

---

Anthony S. diSanti (Finger, Watson, diSanti & McGee, Boone, N.C., on brief), for appellant.

Julia V. Jones (Charles E. Johnson, Moore, Van Allen, Allen & Thigpen, Charlotte, N.C., on brief), for appellee.

Before WIDENER and MURNAGHAN, Circuit Judges, and MERHIGE, United States District Judge for the Eastern District of Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

## I

The appeal involves a contract dispute between E.F. Coe ("Coe"), who owns a motel in Boone, North Carolina, and Thermasol, Ltd. ("Thermasol"), a manufacturer of steam bath units installed in motels. Coe brought suit against Thermasol in the Superior Court of Watauga County, North Carolina and Thermasol, on diversity grounds, removed to the United States District Court for the Western District of North Carolina.

Pursuant to an agreement entered into by Coe and Thermasol in 1978, Thermasol agreed to install forty-two steam bath units in Coe's motel. A disagreement soon arose between the parties because Coe expected that the steam units Thermasol was installing in his motel would include special liners which would cover the previously existing walls of the bath and shower units in Coe's motel. Coe had first seen the Thermasol units in a trade publication and they were depicted therein with the wall liners in place. When the units were installed without such liners in his motel, Coe complained to the Thermasol representatives in New Jersey.

However, under the terms of Coe's 1978 lease agreement, which he signed with Thermasol, no such liners were included as part of the items to be installed. Coe elected to pay according to the Daily Rental plan which established a rate based on the occupancy of those suites in his motel which had Thermasol units installed.[1]

The 1978 lease agreement contained a choice of law clause stating that the lease was to be interpreted in accordance with New Jersey law. It also contained a liquidated damages clause, setting forth numerous events of default[2] and specifying that on occurrence of any of those events

> then Lessee, in addition to paying any arrears in rent and additional rent, late payment charges, the expenses of retaking possession and removal of the System, reasonable attorney's fees of 20% of the amount of any claim, court costs and expenses of disposing of the System, will pay Lessor the unpaid rent that would become due during the balance of the Lease term had Lessee elected the Daily Rental Plan, as set forth in paragraph 4A, after giving effect to rent rate changes as a consequence of the operation of paragraph 10, less all amounts realized by Lessor, if any, in Lessor's disposition of the System, after first deducting all expenses of such disposition. Lessor may, after Lessee's default, and prior to Lessee's payment of all sums payable under this paragraph, enter Lessee's premises and render the System, or parts thereof, unusable, or may remove the System in whole or in part, the Lessor shall not be liable for any damage or injury caused or resulting therefrom, including without limitation, the rendering of the premises or rooms therein as uninhabitable or unrentable. Lessor may, if in Lessor's opinion the cost of removal and disposition would exceed the proceeds of disposition, elect not to remove and dispose of the System, and such election by Lessor shall not be a failure to mitigate damages, nor in any way entitle Lessee to a reduction in the amount due.

Coe admitted he did not, prior to signing, thoroughly read the contract. Coe, nevertheless, persisted in his complaints to Thermasol, which responded by promising action. An executive vice-president of the company stated that "if Wall Liners are needed, we will take care of this." Despite representations to that effect, problems persisted. Coe refused at one point to pay for the units and the company again promised action on the wall liners and made other promises to Coe.

Eventually, in late 1981, a representative of Thermasol came to Boone to arrange

1. Coe was obligated to pay $1.50 for each day a Thermasol "suite" was occupied for the first two years; $1.75 for each day it was occupied for the third year; and $2.50 a day for the fourth through twelfth year. There was a minimum occupancy rate proviso of 59%. It was calculated, at the time of execution, that, over the life of the agreement, Thermasol would be entitled to 59% of $417,742.50, *i.e.,* $246,468.07 based on the minimum occupancy rates and contractually stipulated rates per unit ($1.50 × 42 units installed × 365 days × 2 years = $45,990.00; $1.75 × 42 units × 365 days × 1 year = $27,-827.50; $2.50 × 42 units × 365 days × 9 years = $344,925.00 = Total $417,742.50 × .59 = $246,468.07).

2. Incidents of default, included Coe's (a) failure to pay rent or inaccurate reports of occupancy; (b) misrepresentations or misstatements to Thermasol; (c) failure to name Thermasol as a loss payee under insurance policies; (d) breach of obligations under other leases with Thermasol; (e) insolvency; (f) committing an "act of bankruptcy"; (g) general assignment of assets for the benefit of creditors; (h) petitioning for insolvency or bankruptcy; (i) having a tax lien issued against him; (j) default on any material obligation; (k) ceasing to be owner of the premises; (*l*) transfer of ownership of premises or ownership of the Thermasol system without permission; (m) failure to comply with laws or regulations regarding the lease and system; (n) failure to pay taxes imposed against Thermasol or Coe; (o) submission of inaccurate information to Thermasol; (p) refusal to let Thermasol inspect records during business hours to verify occupancy reports; (q) permitting someone other than Thermasol to install a steam system on the premises; (r) failure to provide complimentary rooms to Thermasol's employees sent to install or service the system; (s) failure to supply water and electricity needed for operation of the system; (t) failure to advertise the system; (u) no longer using the premises as a motel or hotel.

installation of the liners. In order to get the liners installed, Coe agreed, in a separate lease agreement, to pay an additional $0.35 for each occupied suite for 102 months inclusive.[3] Subsequently, wall liners were installed in some, but not all, of Coe's Thermasol units.

In February or March 1982, Coe refused to pay Thermasol anything on either agreement and he defaulted on both leases. Coe instituted suit against Thermasol on May 28, 1982. Thermasol removed to federal court on June 22, 1982 and on June 29, 1982 counterclaimed against Coe for what was due it under the liquidated damages clause of its 1978 lease and what was due under the separate 1981 agreement for installing the wall liners. Thermasol also set forth various defenses, including the applicable statutes of limitations.

On February 14, 1983, Thermasol moved (1) to strike Coe's request for jury trial[1]; (2) to strike Coe's prayer for damages; (3) for partial summary judgment on its counterclaim for damages against Coe; and (4) for summary judgment against Coe on his breach of contract claim.

On June 20, 1983, Thermasol moved to dismiss Coe's complaint on the grounds that Coe's breach of contract claim was barred by the applicable statute of limitations. The court ruled that under N.C.Gen. Stat. § 1-52(1), which specifies a three year limitations period for a cause of action based on a contract[5] or under N.C.Gen. Stat. § 25-2-725, which specifies a four year period for actions brought under the Uniform Commercial Code, Coe's breach of contract action was time-barred. The court ruled that the applicable periods began to run when Coe accepted the equipment from

Thermasol on April 22, 1978. The court did not grant Thermasol's motion for summary judgment on its counterclaim because Coe had raised a question of whether there was fraud in the execution of his two leases with Thermasol.

Coe amended his complaint to allege fraud and execution of the contract under material mistake of fact and the case proceeded to trial. By stipulation, the parties dismissed Thermasol's second counterclaim based on the 1981 lease agreement. A bench trial occurred on June 10, 1985. On August 1, 1985, the court issued its findings of fact and conclusions of law, ruling in favor of Thermasol and awarding it $242,009.60 damages, $48,401.92 in attorney fees[6] and court costs, 615 F.Supp. 316.

## II

On appeal Coe argues a) that the liquidated damages clause in his 1978 lease agreement with Thermasol is an unenforceable penalty under New Jersey law and b) that, because of its actions, Thermasol was equitably estopped from asserting the statute of limitations against Coe's breach of contract claim.

### A. Liquidated Damages

Under New Jersey law, in order for a liquidated damages clause to be a penalty, the covenants in an agreement which trigger application of the liquidated damages provision must be both of varying degrees of importance and disconnected. *Borden Co. v. Manley*, 127 N.J.L. 461, 23 A.2d 281, 283 (1942), *citing Summit v. Morris County Traction Co.*, 85 N.J.L. 193, 88 A. 1048, 1049 (1913). In *Suburban Gas Co. v. Mollica*, 21 N.J.Misc. 118, 32 A.2d 462 (1943),

---

**3.** Again a 59% minimum occupancy proviso applied.

**4.** The lease agreements with Thermasol provided for waiver of jury trial and plaintiff acquiesced, so the trial which occurred was a bench trial.

**5.** Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), federal courts sitting in diver-

sity apply the forum state's statute of limitations.

**6.** Under the liquidated damages clause, Thermasol was entitled to attorney fees at the rate of 20% of the damages. New Jersey law, which has no cap to attorney fee rates, applied to that aspect of the agreement. *Nytco Leasing, Inc. v. Dan-Cleve Corp.*, 31 N.C.App. 634, 230 S.E.2d 559 (1976); *Center Grove Associates v. Hoerr*, 146 N.J.Super. 472, 370 A.2d 55 (App.Div.1977).

*aff'd.* 131 N.J.L. 61, 34 A.2d 892, 893 (1943), the New Jersey district court found that, if the covenants triggering a liquidated damages provision, "though several in number, are interdependent ... [and all have] one focal point" or "one primary purpose," the liquidated damages clause is not a penalty. 32 A.2d at 465, 468.

As in *Suburban Gas,* the covenants which triggered application of the liquidated damages clause in the instant case are interrelated and had the purpose of insuring that Thermasol be given the benefit of its bargain by being paid for its units at the appropriate rental and occupancy rates. We cannot say that under New Jersey law any of the covenants were of such varying degrees of importance or so disconnected from one another that they made the liquidated damages clause a penalty.

It must also be emphasized that the figure specified by the liquidated damages clause was not an arbitrary one. It reasonably approximated the amount Thermasol would have received in the absence of breach by Coe, having been calculated on the basis of the 59% minimum occupancy guaranteed to Thermasol. It was considerably less than the sum which Thermasol might have received if Coe's Thermasol units were occupied at a higher occupancy rate.[7]

### B. *Estoppel*

Coe's second point is that Thermasol is equitably estopped from relying on the statute of limitations because of Thermasol's actions in misleading him as to its willingness to make repairs, install liner units, etc. In particular, Coe points to the assurance in a letter dated April 19, 1978 from an executive vice-president of Thermasol that "If Wall Liners are needed, we will take care of this," as inducing inaction on his part.

We cannot say that the district court erred in granting summary judgment on the basis of the statute of limitations. Under North Carolina law, in order to pre-

vail on his assertion of equitable estoppel as an affirmative defense, Coe would have had to show that (1) Thermasol's conduct amounted to false representation or concealment of material facts; (2) that it was Thermasol's intent or expectation that Coe act upon those misrepresentations or concealments; and (3) that Thermasol had knowledge, actual or constructive, of the true facts. *Peek v. Wachovia Bank & Trust Co.,* 242 N.C. 1, 86 S.E.2d 745, 753 (1955).

The district court found that the alleged misrepresentation only went to the execution of the 1978 contract and that Coe acknowledged full performance of that contract in April 1978, more than four years prior to the institution of suit. Nonetheless, the court allowed Coe to amend his complaint to raise the issue of fraud in the execution of the two contracts and the case was tried in that posture. As the trier of fact, the district court ruled on those questions of fact in its bench trial and found that the defendant Thermasol "did not make material misrepresentations of fact in inducing plaintiff to enter into the 1978 lease" and that Coe "in entering into and performing under the 1978 lease, did not rely on the alleged facts or assumptions that wall liners were included in the 1978 Lease." The court also found that "[Coe] is an experienced businessman. There is no evidence of unequal bargaining power in regard to the 1978 lease."

Given the district court's opportunity to assess the testimony and evidence as to the existence of fraud or estoppel, we cannot say that its findings were clearly erroneous on the record before us. *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

**7.** *See* note 1 above.